# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

MATTHEW ADAM ALCOTT,

                  **Plaintiff,**

-vs-                              **Case No.  6:12-cv-453-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

                  **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested. Doc. 15.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## I.      BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on December 8, 2009[1].  R. 132. He alleged an (amended date for) onset of disability as December 31, 2007[2], due to a learning

---

[1]Plaintiff's statements in the medical records to various medical sources indicate that he reported having received social security in the past.  R. 471, 479; *see also* R. 528.

[2]Plaintiff cited the later date of October 15, 2009 (citing R. 132) but that date was amended on December 22, 2009 to the earlier one, following Plaintiff's initial application.  *See* Doc. 141.  Plaintiff did not indicate the reason for the change, however, his date of last insured for DIB is December 31, 2008. R. 151.

disability, bipolar disorder, being stabbed in the back, a short temper and not getting along with people.  R. 132, 154.  His application was denied initially and upon reconsideration.  R. 71-77.  Plaintiff requested a hearing, which was held on July 20, 2011, before Administrative Law Judge John D. Thompson, Jr. (hereinafter referred to as "ALJ").  R. 28-66.  In a decision dated August 31, 2011, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 9-25.  Plaintiff timely filed a Request for Review of the ALJ's decision.  R. 7.  The Appeals Council denied Plaintiff's request on January 26, 2012.  R. 1-6.  Plaintiff filed this action for judicial review on March 22, 2012.  Doc. 1.

**B.    Medical History and Findings Summary**

Plaintiff was born August 3, 1983 and was 28 years old at the time of the ALJ's decision.  R. 20, 132.  He has a high school education (R. 32), where he took special education classes and earned a special (not a regular) high school diploma.  R. 159, 265.  In his final year of high school, he was at high school level in reading, sixth grade level in spelling and performing at first grade level in math.  R. 272.  One teacher reported his rating scores as "very significant in the areas of interpersonal problems/inappropriate behaviors/feelings in the areas of depression/physical symptoms and fears."  R. 272. However, a second teacher gave him rating scores of "normal" across the board, from which the school psychologist deduced that he experienced high level of behavior in small self-contained settings.  R 272.  He did well in on the job training and he was expected to successfully complete eighteen weeks of full-time employment by the end of the school year; he was considered friendly and outgoing in the work place.  R. 272.  Plaintiff has past work as a bus boy, dishwasher and hotel room cleaner.  R. 156.

Plaintiff's medical history is set forth in detail in the ALJ's decision[3].   After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from bipolar disorder, post-traumatic stress disorder; history of substance abuse, and residuals from a stab wound to the back, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 14-15.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to a reduced range of medium work.  R.16. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that the ALJ determined that he could perform his past relevant work as a cleaner, and alternatively, Plaintiff could perform work existing in significant numbers in the national economy as a kitchen helper/dishwasher, a carcass washer (*e.g,*. in a slaughterhouse), a poultry boner, and a waste paper hammer mill operator.  R. 18-19. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 19-20.

As the Commissioner points out, the relevant period for Plaintiff's DIB claim was between his alleged onset date of December 31, 2007 and his date of last insured of December 31, 2008[4].  R. 151. The relevant period for Plaintiff's SSI claim began on the date that he filed his application, November 9, 2009. See 20 C.F.R. § 416.335.

---

[3]Plaintiff's history through the date of the decision in July 2011 is summarized in the ALJ's decision.  Records from a July 30, 2011 hospitalization are not in the SSA Record, as noted below.

[4]To be eligible for DIB, a claimant must show that he became disabled prior to the expiration of his disability insured status. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131.

Plaintiff now asserts two main points of error in the ALJ's determination[5].  First, Plaintiff argues that the ALJ erred by omitting from his residual functional capacity assessment Plaintiff's limitations in concentration, persistence and pace, ability to keep a job, and in accepting instructions. R. 18-20.  Second, he claims the ALJ erred in assessing the issue of his failure to consistently take his medications.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED.**

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery*

---

[5]Plaintiff's third point – that it is not appropriate for the Commissioner to ask the Court to consider *post hoc* justifications or re-weigh the evidence in support of the ALJ's decision – is more of a general statement of the law rather than a particularized argument about the facts of this case.  *See* Doc. 18 at 19.

*v. Sullivan*, 979 F.2d 835, 837 (11ᵗʰ Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.    ISSUES AND ANALYSIS

### A.    Residual functional capacity

Plaintiff claims that the ALJ should not have found him able to perform medium work in light of limitations that the ALJ omitted from Plaintiff's RFC and the hypothetical to the VE. The Commissioner argues that substantial evidence supports the ALJ's mental RFC findings[6].

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

---

[6] The Commissioner argues that Plaintiff has not challenged the ALJ's findings as to his physical abilities and has waived any such argument. *Cunningham v. Dist. Att'y Office for Escambia Cnty*, 592 F.3d 1237, 1254 n.9 (11th Cir. 2010); *Copher v. Comm'r of Soc. Sec.*, No. 10-14595, 2011 WL 2322277, at *2 n.1 (11th Cir. Jun 13, 2011). While it is true that Plaintiff's arguments are focused on his mental impairments and limitations, the Court need not reach the specific issue of "waiver" which the parties have not adequately briefed.

125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined that Plaintiff had the severe mental impairments of bipolar disorder, post-traumatic stress disorder; and a history of substance abuse. R. 14. The ALJ found Plaintiff had the RFC to perform medium work, except he would "do better at a job dealing with things rather than people and that he can have no more than occasional interaction with others, and is limited to work involving one to two step rote and repetitive operations. Within these specific limitations, he is capable of undertaking work on a consistent and sustained bases for 8 hours a day for 5 days a week or an equivalent work schedule." R. 15. Plaintiff argues that the ALJ erred by failing to include in his RFC and the hypothetical his limitations in concentration, persistence, and pace; his in ability to keep a job, and in his inability to accept instructions. Doc. 18 at 12-16.

Plaintiff argues that although the ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace (R. 15), he did not include these limitations in Plaintiff's RFC and in the hypothetical to the VE. R. 16, 58-59. Plaintiff argues that, pursuant to the holding in

*Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1181 (11th Cir. 2011), the ALJ was required to specifically account for this limitation in the hypothetical question to the vocational expert. Doc. 18. Plaintiff argues that it was insufficient for the ALJ to limit Plaintiff to "repetitive one- and two-step operational tasks" (R. 59), because such a limitation does not fully account for a finding of moderate limitations in concentration, persistence or pace, citing *Winschel*, 631 F.3d at 1180 ("Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."). However, as the Commissioner points out, the Eleventh Circuit in *Winschel* also found that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.*

Plaintiff also argues that the ALJ erred in failing to include a limitation in Plaintiff's RFC for his inability to keep a job. Plaintiff contends that the ALJ failed to consider and credit Plaintiff's treatment records which reflect a medical opinion that Plaintiff was "not capable of holding a job," (R. 532), vocational problems (R. 481) and Plaintiff's and his mother's report that he was unable to hold numerous jobs over the years. R. 49, 172. Plaintiff also points to low GAF scores below 50 on certain dates, arguing these indicate that Plaintiff could not function or keep a job. Plaintiff argues that the ALJ found to the contrary by including in Plaintiff's RFC that "he is capable of undertaking work on a consistent and sustained based for 8 hours a day for 5 days a week or an equivalent work schedule." R. 16, 59. Plaintiff additionally argues that the ALJ should have included in his RFC a limitation in accepting instructions. Doc. 18 at 15. He argues that he was diagnosed with intermittent explosive disorder (R. 418) and impulse control disorder (R. 437); he and his mother reported that he

needs to be told instructions "over and over" (R. 170), and he gets along terribly with authority figures (R. 171); and the non-examining psychologist opined that he has a moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors. (R. 482).

Plaintiff alternatively contends that the ALJ did not specifically account for his limitations in persistence and pace, because the ALJ stated as part of the hypothetical to the VE that the "simple and repetitive one- and two-step operational" tasks "would be available and can be performed eight hours a day, five days a week or an equivalent work schedule on a constant and continuing basis, in a competitive work situation or environment." R. 59. Plaintiff argues that the ALJ did not specifically find in his RFC assessment that Plaintiff could do two-step repetitive tasks despite his limitations in concentration, persistence or pace. Doc. 18 at 13.

In this case, the ALJ credited the Mental RFC Assessment completed by non-examining state agency psychologist Val Bee, Psy.D.,[7] who diagnosed Plaintiff with a learning disability, bipolar disorder, a personality disorder, and a substance addiction disorder. R. 487, 489, 493-94. Dr. Bee indicated on an RFC form that Plaintiff could understand, remember and carry out very short and simple instructions, work in coordination or proximity to others, make simple work-related decisions, complete a normal workday and workweek, perform at a consistent pace, interact appropriately with the general public, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 482-83. She found that Plaintiff suffered from a mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace and no episodes of de-compensation of extended duration. R. 482-84. Dr. Bee opined in her functional capacity assessment of Plaintiff that he "may have difficulty with detailed

_____

[7] The ALJ noted that a later non-examining state agency psychologist's assessment (Ex. 11F-R. 516-29) found only a mild impairment in concentration, persistence and pace with no other limitations, but the ALJ elected to give Plaintiff "the benefit of the doubt regarding his mental limitations and notes that exams at [ACT Behavioral] . . . support a finding of an ongoing severe mental impairment." R. 15.

learning, *but he appears mentally capable of well structured task activity*. Moodiness and underlying characterlogical [sic] issues my lead to conflicts at times with coworkers and supervisors, *but the claimant could persist in a role with only limited and superficial social demands*. Given grandiose tendencies, may need support with appropriate goal setting." R. 484 (emphasis added). She also opined that Plaintiff had no significant limitation in understanding, remembering, and carrying out short, simple instructions. R. 482-83. The ALJ included Dr. Bee's functional capacity assessment opinion in the hypothetical to the VE by limiting Plaintiff to "doing better at a job at dealing with things rather than people, no more than occasional interaction with others and a limit to work involving one to two step rote and repetitive operations." R. 16. As such, the ALJ's RFC and the hypothetical to the VE were based on substantial evidence from Dr. Bee's assessments, and adequately addressed any limitations Plaintiff had in his alleged "inability to keep a job" or "accept instructions."

Moreover, the ALJ thoroughly discussed Plaintiff's relevant mental health treatment from the emergency department at Halifax Hospital and at Stewart Marchman-ACT Behavioral Healthcare (hereinafter "ACT Behavioral"). R. 16-20. He noted that Plaintiff admitted to having "previously stopped taking his medications because he felt better and that he does not presently seek treatment from a mental health doctor, only a therapist and emergency room treatment as needed." R. 16. The ALJ noted Plaintiff's April 2007 involuntarily hospitalization for mental health issues, after his son had been removed from his custody; the mental health records also contained references to reported domestic violence episodes. R. 17, 429, 433-39, 472. The ALJ also noted that, at the time of Plaintiff's psychiatric admission in April 2007, Plaintiff tested positive for cannabis, had a history of diagnoses of bipolar disorder and attention deficit hyperactivity disorder and had rambling, disjointed speech. R. 17, 429-430, 435-436. Plaintiff at that time admitted a long history of substance abuse

and medication non-compliance, as well as non-compliance with his medications at the time of his hospital admission.  R. 17.

The ALJ also quoted extensively from the February 2010 consultative examination opinion of psychologist Dr. Malcolm Graham who noted Plaintiff's previous hospitalization three or four years before, and that Plaintiff admitted he was hospitalized so many times in the past because he had gone off of his medications.  R. 17, 479-81.  Dr. Graham found during the February 2010 examination that Plaintiff had no indication of depressed or anxious mood, he had an appropriate affect, no deficits in thinking, attention, concentration or memory, and he was fully oriented with no hallucinations or perceptual disturbances; diagnosed Plaintiff with bi-polar disorder by history; and his prognosis was considered possibly good. R. 17, 480-81.

The ALJ also discussed Plaintiff's treatment notes from ACT Behavioral which reported in May 2010 that Plaintiff was doing fairly well, taking medications as prescribed, had good attention and concentration, intact memory, no evidence of suicidal or homicidal ideation, fair insight and judgment, normal impulse control, affect and orientation.  R. 17, 512-13.  The ACT Behavioral treatment notes recorded a gap in Plaintiff's treatment with that clinic until seven months later, in December 2010, when he returned in a hypermanic state with pressured, hyperverbal speech, and Plaintiff reported he had been non-compliant with his medications again. R. 17, 530.  The ALJ noted that Plaintiff did not return for treatment to ACT Behavioral for another five months, until April 2011, when he reported being stable and had no complaints, he denied mood swings, depression, paranoia and hallucinations, good attention and concentration; similar reports were documented in July 2011[8].

---

[8]The ALJ noted that the medical records report several hospitalizations for mental health issues.  However, the ALJ's decision does not comment on Plaintiff's July 30, 2011 involuntary (Baker Act) admission to Halifax Hospital and ACT Behavioral, which took place after Plaintiff's hearing on July 20, 2011, but before the ALJ's final decision was issued on August 31, 2011.  R. 249. These medical records are not contained in the Certified SSA Record, although Plaintiff's counsel sought leave to keep the Record open to submit them. R. 249-50.  It is not clear whether the records were ever submitted to SSA, but they have not been made part of the SSA Certified Record.

R. 17, 536, 542.  Overall, as the ALJ noted, the evidence indicated Plaintiff was stable when compliant taking his medications but had periods when he is non-compliant, leading to an increase in his bipolar symptoms. R. 17.

The ALJ also noted that Plaintiff's testimony and reports about his activities of daily living and capabilities supported his mental RFC findings. R. 16.  Plaintiff admitted activities such as riding the bus, spending time with his child and girlfriend, doing odd jobs for his mother for money, applying for various jobs, being able to stay on task for things that interest him but not boring things, and he testified that he could possibly return to his past job as a cleaner and cart pusher at Wal-Mart, and that he was actively seeking work.  R. 16, 44-46, 49, 52-54.  Plaintiff also admitted to playing football, walking 2 miles, going to work with his girlfriend to her job delivering Chinese food[9] and spending time with his son and friends.  Accordingly, the ALJ's RFC and the limitations in the hypothetical to the VE were properly based on substantial evidence in Dr. Graham's consultative examination and Plaintiff's reported activities of daily living.

### B.     Non-compliance with medications

Plaintiff asserts that the ALJ failed to apply the correct legal standard to the issue of his non-compliance with taking medications, and it is the Commissioner's burden to prove unjustified noncompliance.  Plaintiff argues that he submitted evidence that his noncompliance with medications was part of his mental limitations and was justified, but the ALJ failed to investigate the issue and in effect rejected his severe mental symptoms because of non-compliance with taking his medications to control his condition.  The Commissioner argues that the ALJ properly considered Plaintiff's non-compliance as part of an overall determination discounting Plaintiff's credibility and the severity of his symptoms.

---

[9]Some reports in the medical records describe delivering Chinese food as Plaintiff's job; however, he testified that he had lost his driver's license for failure to pay child support.

The regulations provide that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *See* 20 C.F.R. § 416.930(b). "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)). In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored; this finding must be supported by substantial evidence.  *Dawkins,* 848 F.2d at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)).  The Commissioner argues that the facts of this case are distinguishable from *Dawkins*, where the plaintiff had argued she was non-compliant with treatment for her disabling condition because of poverty, or inability to afford the surgery her doctor recommended. 848 F.2d at 1213-14 (holding that, while a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law).

Plaintiff contends that there is evidence in the medical records justifying his non-compliance, such as treatment records which noted his understanding that he needed to maintain compliance to remain stable "but admi[ssion] that he is unable to do so for any extended period of time without becoming unable to remember when to take his med[ications] consistently." R. 435.  Other records report Plaintiff expressing his desire that he "genuinely wanted to start back on medications" (R. 429), and "the best formula is a combination of [certain medications] but he does know that he does not remain compliant with that."  R. 433. He also cites a report from his mother that he had difficulties in concentration, completing tasks, following instructions, and needing to be told instructions "over

and over," and his diagnosis with ADHD.  R. 167, 170, 398, 418.  Plaintiff argues that his non-compliance is justified because it is related to his mental limitations.

Plaintiff argues that the ALJ assumed Plaintiff's "long history of medication non-compliance" (R. 17), leading to a hospitalization in April 2007, was unjustified, and then rejected his severe limitations caused by non-compliance.  Plaintiff argues that the ALJ should have included in his RFC Plaintiff's severe symptoms which result in involuntary psychiatric hospitalization when he was non-compliant or, at the very least, the ALJ should have investigated the reasons for non-compliance.

The Commissioner contends in this case, the ALJ did not analyze Plaintiff's non-compliance under the regulations as a complete bar to find he would otherwise be disabled, but instead discussed Plaintiff's failure to take his medications as evidence of Plaintiff's lack of credibility on the severity of his symptoms. The Commissioner argues that the efficacy of Plaintiff's treatment is an issue that was properly considered by the ALJ in the context of Plaintiff's decision not to take his medications for long stretches of time. Doc. 19 at 12 (citing 20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv)).

As discussed above regarding the ALJ's finding on Plaintiff's RFC, the ALJ specifically noted that although Plaintiff was diagnosed and was seen sporadically at ACT Behavioral, in 2007, Plaintiff admitted to a long history of substance abuse and medication non-compliance, as well as non-compliance with his medications leading up to his hospital admission. R. 17. The ALJ also noted the gap in treatment with ACT Behavioral first for a seven month period, May to December 2010, when Plaintiff admitted that he had again been non-compliant with his medications. R. 17, 530. The ALJ further noted that Plaintiff went another five months, until April 2011, before returning to ACT Behavioral, when he reported being stable; and similar reports were documented in July R. 17, 536, 542. The ALJ also quoted extensively from the February 2010 consultative examination opinion of psychologist Dr. Malcolm Graham who noted Plaintiff's previous hospitalization in 2007, and

Plaintiff's admission that he was hospitalized so many times in the past because he had gone off of his medications.  R. 17, 479-81. Plaintiff was stable when compliant taking his medications, but, as the ALJ noted, had periods of non-compliance and an increase in bipolar symptoms. R. 17.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  To establish a disability based on testimony of pain or other subjective symptoms, a claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged subjective symptoms; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed subjective symptoms. ( *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir.2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)) (stating that "the standard also applies to complaints of subjective symptoms other than pain")). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.

In this case, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his stated symptoms were not entirely credible and would not preclude medium work with the additional mental limitations he noted. R. 18.  When an ALJ decides not to credit a claimant's testimony about his limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ noted that Plaintiff was never described as physically or mentally disabled, was stable when taking his medications for a bipolar disorder and post-traumatic stress disorder, performed a variety of daily activities which suggested physical and mental competence and admitted to being able to work his old job if it were offered to him. The ALJ made a point of stating that he "in no way impl[ed] that the claimant does not experience some limitations due to his impairments. However, the limitations alleged by the claimant that find support within the objective medical record have been fully accommodated for by the above residual functional capacity." R. 18. The ALJ also noted that Plaintiff's testimony and reports about his activities of daily living such as riding the bus, spending time with his child and girlfriend, doing odd jobs for his mother for money, applying for various jobs, and being able to stay on task for things that interest him but not boring things. R. 16, 44-46, 49, 52-54.

The ALJ relied on several additional reasons to find Plaintiff not disabled, *e.g.*, Plaintiff's admitted abilities and activities, such as his testimony that he could possibly return to his past work at Wal-Mart, and that he was actively looking for several jobs. R. 17. The ALJ also noted Plaintiff's testimony that he stopped taking medications because "he was feeling better." R. 16. The record additionally reflects Plaintiff's activities of daily living included playing football, walking two miles at a time, going to work with his girlfriend to her job delivering Chinese food[10] and spending time with his son and friends. The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including – as one among a number of reasons – that Plaintiff is stable when taking his medications for bipolar disorder and post-traumatic stress disorder (R. 18). *See Barber v. Commissioner of Social Sec.*, 2010 WL 746443 (M.D. Fla. 2010) (affirming ALJ's finding that that claimant did not suffer a severe mental impairment where medical records showed that the claimant

---

[10]Some reports in the medical records describe delivering Chinese food as Plaintiff's job; however, he testified that he had lost his driver's license for failure to pay child support.

went long periods without any mental health treatment and worked during those periods, and his symptoms improved with medication).   These are factors that the ALJ is directed to consider.  20 C.F.R. §§ 404.1529; 416.929.  Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced was not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." *Carter v. Commissioner of Social Sec.*, 2011 WL 292255, *2 (11th Cir. 2011) (unpublished) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002)).

## IV.    CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 21, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record